FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 19, 2021

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| AMANDA H.,[1] <br>         Plaintiff, <br><br>   vs. <br><br> ANDREW M. SAUL, <br> COMMISSIONER OF SOCIAL <br> SECURITY, <br>         Defendant. | No. 2:20-cv-00124-MKD <br><br> ORDER DENYING PLAINTIFF'S <br> MOTION FOR SUMMARY <br> JUDGMENT AND GRANTING <br> DEFENDANT'S MOTION FOR <br> SUMMARY JUDGMENT <br><br> ECF Nos. 16, 17 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 16, 17. The parties consented to proceed before a magistrate judge. ECF No. 6. The Court, having reviewed the administrative record and the parties' briefing,

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

ORDER - 1

1  is fully informed.  For the reasons discussed below, the Court denies Plaintiff's

2  motion, ECF No. 16, and grants Defendant's motion, ECF No. 17.

3                                    **JURISDICTION**

4          The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

5                               **STANDARD OF REVIEW**

6          A district court's review of a final decision of the Commissioner of Social

7  Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

8  limited; the Commissioner's decision will be disturbed "only if it is not supported

9  by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153,

10  1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

11  reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159

12  (quotation and citation omitted).  Stated differently, substantial evidence equates to

13  "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and

14  citation omitted).  In determining whether the standard has been satisfied, a

15  reviewing court must consider the entire record as a whole rather than searching

16  for supporting evidence in isolation. *Id.*

17          In reviewing a denial of benefits, a district court may not substitute its

18  judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152,

19  1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

20  rational interpretation, [the court] must uphold the ALJ's findings if they are

ORDER - 2

1  supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

2  F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an

3  ALJ's decision on account of an error that is harmless." *Id.*  An error is harmless

4  "where it is inconsequential to the [ALJ's] ultimate nondisability determination."

5  *Id.* at 1115 (quotation and citation omitted).  The party appealing the ALJ's

6  decision generally bears the burden of establishing that it was harmed.  *Shinseki v.*

7  *Sanders*, 556 U.S. 396, 409-10 (2009).

8  **FIVE-STEP EVALUATION PROCESS**

9  A claimant must satisfy two conditions to be considered "disabled" within

10 the meaning of the Social Security Act.  First, the claimant must be "unable to

11 engage in any substantial gainful activity by reason of any medically determinable

12 physical or mental impairment which can be expected to result in death or which

13 has lasted or can be expected to last for a continuous period of not less than twelve

14 months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be

15 "of such severity that he is not only unable to do his previous work[,] but cannot,

16 considering his age, education, and work experience, engage in any other kind of

17 substantial gainful work which exists in the national economy."  42 U.S.C. §

18 1382c(a)(3)(B).

19 The Commissioner has established a five-step sequential analysis to

20 determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §

ORDER - 3

416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work

activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial

gainful activity," the Commissioner must find that the claimant is not disabled.  20

C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis

proceeds to step two.  At this step, the Commissioner considers the severity of the

claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from

"any impairment or combination of impairments which significantly limits [his or

her] physical or mental ability to do basic work activities," the analysis proceeds to

step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy

this severity threshold, however, the Commissioner must find that the claimant is

not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to

severe impairments recognized by the Commissioner to be so severe as to preclude

a person from engaging in substantial gainful activity.  20 C.F.R. §

416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the

enumerated impairments, the Commissioner must find the claimant disabled and

award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the

severity of the enumerated impairments, the Commissioner must pause to assess

ORDER - 4

the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  *Id.*  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  *Id.*

ORDER - 5

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On May 9, 2017, Plaintiff applied for Title XVI supplemental security income benefits alleging a disability onset date of March 15, 2017.[2]  Tr. 15, 80, 190-200.  The application was denied initially, and on reconsideration. Tr. 96-104; Tr. 108-14.  Plaintiff appeared before an administrative law judge (ALJ) on December 4, 2018.  Tr. 35-68.  On January 30, 2019, the ALJ denied Plaintiff's claim.  Tr. 12-34.

---

[2] Plaintiff previously applied for disabled child benefits, which resulted in a denial from an ALJ on April 2, 2004; Plaintiff did not appeal the denial.  Tr. 218. Plaintiff applied for Social Security Disability (SSD) and Supplemental Security Income (SSI), which resulted in an initial denial on November 10, 2009, and Plaintiff did not appeal the decision.  *Id.*  Plaintiff again applied for SSD in 2014, and SSI in 2015, both of which were denied initially and not appealed.  Tr. 217-18.

1    At step one of the sequential evaluation process, the ALJ found Plaintiff has

2    not engaged in substantial gainful activity since May 9, 2017.  Tr. 17.  At step two,

3    the ALJ found that Plaintiff has the following severe impairments: colitis, chronic

4    kidney disease, chronic obstructive pulmonary disease (COPD), bipolar disorder,

5    anxiety disorder, history of polysubstance abuse, and obesity with body mass index

6    (BMI) of 36.  *Id.*

7    At step three, the ALJ found Plaintiff does not have an impairment or

8    combination of impairments that meets or medically equals the severity of a listed

9    impairment.  Tr. 18.  The ALJ then concluded that Plaintiff has the RFC to perform

10   light work with the following limitations:

> [Plaintiff] can occasionally stoop, crouch and crawl.  She is limited to
> occasional overhead lifting and frequent overhead reaching.  She must avoid
> more than moderate exposure to respiratory irritants.  She is able to
> understand, remember and carry out both simple, routine tasks and up to
> four-step, semi-skilled tasks.  She is limited to minimal interaction with the
> public (less than occasional).

Tr. 21.

At step four, the ALJ found Plaintiff is unable to perform any of her past

relevant work.  Tr. 28.  At step five, the ALJ found that, considering Plaintiff's

age, education, work experience, RFC, and testimony from the vocational expert,

there were jobs that existed in significant numbers in the national economy that

Plaintiff could perform, such as small products assembler, electronics worker, and

garment sorter.  Tr. 30.  Therefore, the ALJ concluded Plaintiff was not under a

ORDER - 7

disability, as defined in the Social Security Act, from the date of the application through the date of the decision. *Id.*

On January 27, 2020, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ properly evaluated the medical opinion evidence;

2. Whether the ALJ conducted a proper step-two analysis;

3. Whether the ALJ properly evaluated Plaintiff's symptom claims; and

4. Whether the ALJ conducted a proper step-five analysis.

ECF No. 16 at 7-8.

ORDER - 8

# DISCUSSION

## A. Medical Opinion Evidence

Plaintiff contends the ALJ erred in her consideration of the opinions of John Daller, M.D.; Renee Eisenhauer, Ph.D.; and John Gilbert, Ph.D.  ECF No. 16 at 10-12.

As an initial matter, for claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence.  *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 416.920c.  The new regulations provide that the ALJ will no longer "give any specific evidentiary weight…to any medical opinion(s)…" *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. § 416.920c(a).  Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. § 416.920c(a) and (b).  The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding"

ORDER - 9

(including, but not limited to, "evidence showing a medical source has familiarity

with the other evidence in the claim or an understanding of our disability

program's policies and evidentiary requirements").  20 C.F.R. § 416.920c(c)(1)-

(5).

Supportability and consistency are the most important factors, and therefore

the ALJ is required to explain how both factors were considered.  20 C.F.R. §

416.920c(b)(2).  Supportability and consistency are explained in the regulations:

> (1) *Supportability.* The more relevant the objective medical evidence
> and supporting explanations presented by a medical source are to
> support his or her medical opinion(s) or prior administrative medical
> finding(s), the more persuasive the medical opinions or prior
> administrative medical finding(s) will be.
>
> (2) *Consistency.* The more consistent a medical opinion(s) or prior
> administrative medical finding(s) is with the evidence from other
> medical sources and nonmedical sources in the claim, the more
> persuasive the medical opinion(s) or prior administrative medical
> finding(s) will be.

20 C.F.R. § 416.920c(c)(1)-(2).  The ALJ may, but is not required to, explain how

the other factors were considered.  20 C.F.R. § 416.920c(b)(2).  However, when

two or more medical opinions or prior administrative findings "about the same

issue are both equally well-supported ... and consistent with the record ... but are

not exactly the same," the ALJ is required to explain how "the other most

persuasive factors in paragraphs (c)(3) through (c)(5)" were considered.  20 C.F.R.

§ 416.920c(b)(3).

### 1. Dr. Daller

On December 4, 2018, Dr. Daller testified at Plaintiff's hearing and rendered an opinion on Plaintiff's functioning. Tr. 39-47. Dr. Daller opined the record supports Plaintiff's diagnoses of anxiety, PTSD, bipolar disorder, history of insomnia, history of alcohol and polysubstance use, history of endometrial cancer, history of obstructive sleep apnea, and stated there was a claim of chronic kidney disease and chronic obstructive pulmonary disease, and there was a question of whether she has chronic colitis or chronic irritable bowel disease. Tr. 39. Dr. Daller noted Plaintiff had possible C difficile colitis in February 2018, and she previously had a tonsillectomy, a total abdominal hysterectomy bilateral salpingo-oophorectomy in 2011, during which a cystotomy was performed, meaning an inadvertent incision/opening was created in the bladder which required later surgeries to correct. *Id.* Dr. Daller stated Plaintiff reports she has had 23 surgeries to repair the cystotomy, and resolve complications that arose from it, but he found that there was no primary source documentation to support the reported number of operations. Tr. 39-40. Dr. Daller did not indicate whether he believed the primary source documentation was lacking because the surgeries took place outside of the relevant adjudicative period, or if he believed the number of surgeries is inaccurate; however, he gave his opinion assuming the 23 surgeries was correct, Tr. 40. Dr. Daller opined Plaintiff is limited to lifting/carrying 20 pounds

ORDER - 11

occasionally and 10 pounds frequently, pushing/pulling 20 pounds occasionally, occasional bending, crawling, and stooping, occasionally overhead reaching, and occasional exposure to dust/fumes. Tr. 40-41. Dr. Daller stated that while carpal tunnel syndrome may be an established diagnosis, there was not objective evidence that Plaintiff drops things due to carpal tunnel as she alleges, and there is not objective evidence to demonstrate the alleged functional limitations caused by carpal tunnel; he stated an EMG and physical examination would be needed to assess the degree of impairment. Tr. 42-43. The ALJ found Dr. Daller's opinion was particularly persuasive. Tr. 27.

Plaintiff contends the ALJ erred by adopting Dr. Daller's findings but not including Dr. Daller's opinions regarding Plaintiff's limitations due to carpal tunnel syndrome and frequent episodes of diarrhea. ECF No. 16 at 10. First, Plaintiff argues Dr. Daller testified that if Plaintiff testified she drops things due to carpal tunnel, then it would be established she has a functional limitation due to her carpal tunnel syndrome. ECF No. 16 at 10 (citing Tr. 43). Dr. Daller stated, "it would be hard for me to opine, you know, clearly if it's established by testimony or other ways that she drops things, then I would say, yes, that would be a functional limitation." Tr. 43. However, Dr. Daller testified there was no objective evidence to demonstrate the degree of functional limitations, if any, caused by Plaintiff's carpal tunnel syndrome. *Id.* Dr. Daller also testified that an EMG and physical

ORDER - 12

examination would be needed to determine Plaintiff's functional limitations.  Tr. 42-43.  When considering his testimony as a whole, Dr. Daller's statement that Plaintiff's testimony might establish she has a limitation in grasping items without dropping them does not change his opinion that there is no objective evidence of Plaintiff's alleged manipulative limitation.  The ALJ reasonably found Plaintiff's carpal tunnel syndrome is not a severe impairment given the lack of objective evidence to support any limitations due to the condition.  Tr. 18, 27.  Further, any error would be harmless as Plaintiff has not demonstrated any harm in the ALJ rejecting any portion of Dr. Daller's opinion; Dr. Daller stated Plaintiff dropping items may be a functional limitation, but did not quantify the limitation, and he opined Plaintiff is capable of performing light work with additional limitations.  Tr. 40, 43, *see Molina,* 674 F.3d at 1115.  The ALJ accounted for Dr. Daller's opinion by limiting Plaintiff to light work with additional limitations.  Thus, any error is harmless.

Next, Plaintiff argues the ALJ failed to consider that Dr. Daller testified that frequent episodes of diarrhea could cause absenteeism and/or the need to take additional restroom breaks, which supports Plaintiff's testimony she needs additional bathroom breaks.  ECF No. 16 at 10-11 (citing Tr. 44).  However, Dr. Daller testified there is no established etiology for Plaintiff's diarrhea, she was always discharged home after visits for diarrhea, her imaging and lab results were

ORDER - 13

essentially benign, and thus the objective evidence does not support the level of

impairment Plaintiff alleges due to frequent diarrhea. Tr. 44-45. Again, Plaintiff

has not demonstrated any harmful error. Dr. Daller stated, "[i[f someone were to

have frequent episodes of diarrhea," then there would be a "need for additional

bathroom breaks beyond the normally scheduled breaks." Tr. 444. Dr. Daller did

not opine Plaintiff had a need for additional breaks nor did he opine Plaintiff would

be absent due to her symptoms. Rather, he opined there was not objective

evidence to support Plaintiff's allegations. Tr. 44-45. Plaintiff argues Dr. Daller

did not adequately review the evidence as there was evidence of Plaintiff's need

for bathroom breaks and documentation of adhesions from surgeries and other

complications. ECF No. 16 at 11 (citing Tr. 285, 287, 375). While there is

documentation of adhesions and Plaintiff reporting frequent diarrhea and

experiencing related symptoms, Dr. Daller's opinion was supported by the

evidence discussed herein, and as such the ALJ did not error by relying on Dr.

Daller's opinion.

### 2. Dr. Eisenhauer and Dr. Gilbert

On August 16, 2017, Dr. Eisenhauer, a State agency psychological

consultant, found Plaintiff's depressive/bipolar-related disorder was a severe

impairment, Tr. 73, and opined Plaintiff has moderate limitations in her ability to

maintain attention/concentration for extended periods, work in coordination with

ORDER - 14

or in proximity to others without being distracted by them, complete a normal

workday/workweek without interruptions from psychologically-based symptoms,

and perform at a consistent pace without an unreasonable number/length of rest

periods, and interact with the general public.  Tr. 75-76.  She opined Plaintiff had

no significant limitations in the remaining areas of functioning.  *Id.*  She further

opined Plaintiff retains the ability to carry out one and two-step instructions, her

symptoms would interfere with her ability to maintain sustained concentration,

regular attendance and to persist through a normal workweek, however, the

impairments are not so severe that they would prevent Plaintiff from being able to

sustain more than one or two-step instructions in a reasonably consistent manner,

and Plaintiff's contact with the public should be limited but Plaintiff can work in

coordination and proximity to coworkers and accept supervisory input.  Tr. 76.  On

November 28, 2017, Dr. Gilbert rendered a similar opinion, however he opined

Plaintiff retains the ability to carry out complex instructions, including instructions

consistent of four or more steps.  Tr. 88-89.  The ALJ found Dr. Eisenhauer and

Dr. Gilbert's opinions highly persuasive.  Tr. 28.  As State agency consultants, Dr.

Eisenhauer and Dr. Gilbert's opinions are now considered prior administrative

medical findings, 20 C.F.R. §416.913(a)(5), however, the ALJ was required to

consider Dr. Eisenhauer and Dr. Gilbert's opinions under the same rules that apply

to medical opinions, 20 C.F.R. § 416.913a(b)(1).

ORDER - 15

1    Plaintiff argues the ALJ erred by failing to make any findings regarding the

2  degree to which Plaintiff is unable to maintain regular attendance in the workplace.

3  ECF No. 16 at 11-12.  Plaintiff argues the State agency doctors opined Plaintiff's

4  symptoms cause some interference in her ability to maintain concentration and

5  attendance and persist through a normal workweek, which could amount to a

6  disabling opinion given the vocational expert's testimony that missing more than

7  one day of work per month precludes competitive employment.  *Id.*  However, the

8  State agency doctors did not opine Plaintiff would miss more than one day per

9  month of work, and gave non-disabling opinions.  Plaintiff has not demonstrated

10  the ALJ failed to include any portion of the State agency opinions, nor that any

11  failure to include a limitation amounts to harmful error.  Plaintiff is not entitled to

12  remand on these grounds.  Plaintiff's arguments regarding the ALJ improperly

13  rejecting her symptom claims are addressed *supra.*

14

15

16

17

18

19

20

ORDER - 16

**B. Step-Two**

Plaintiff contends the ALJ erred at step two by failing to identify Plaintiff's bilateral carpal tunnel syndrome and history of surgeries along with adhesions, polyps and narrow lumen of the colon as severe impairments.  ECF No. 16 at 12-14.  At step two of the sequential process, the ALJ must determine whether the claimant suffers from a "severe" impairment, i.e., one that significantly limits her physical or mental ability to do basic work activities.  20 C.F.R. § 416.920(c).  To establish a severe impairment, the claimant must first demonstrate the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice.  20 C.F.R. § 416.921.

An impairment may be found to be not severe when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work…."  SSR 85-28 at *3.  Similarly, an impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities; which include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; seeing, hearing, and speaking; understanding, carrying out and remembering simple instructions; responding appropriately to supervision, coworkers and usual work situations; and dealing with changes in a

1  routine work setting.  20 C.F.R. § 416.922(a); SSR 85-28.[3]

2        Step two is "a de minimus screening device [used] to dispose of groundless

3  claims."  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  "Thus, applying

4  our normal standard of review to the requirements of step two, [the Court] must

5  determine whether the ALJ had substantial evidence to find that the medical

6  evidence clearly established that [Plaintiff] did not have a medically severe

7  impairment or combination of impairments."  *Webb v. Barnhart*, 433 F.3d 683, 687

8  (9th Cir. 2005).

9        First, the ALJ found Plaintiff's carpal tunnel syndrome is not a severe

10  impairment.  Tr. 18.  While Plaintiff was diagnosed with the condition on January

11  16, 2018, given wrist braces and advised at the appointment to follow-up in eight

12  weeks, Plaintiff never followed up.  Tr. 18 (citing Tr. 471).  Plaintiff argues the

13  ALJ erred in finding her carpal tunnel syndrome is not a severe impairment.  ECF

14  No. 16 at 13-14.  However, Plaintiff does not point to any objective evidence of

15  severe limitations caused by carpal tunnel.  Plaintiff argues the positive Tinel's is

16  evidence of the condition, ECF No. 16 at 13, but Dr. Daller stated Tinel's is a

17

18  ─────────────────────

19  [3] The Supreme Court upheld the validity of the Commissioner's severity

20  regulation, as clarified in SSR 85-28, in *Bowen v. Yuckert*, 482 U.S. 137, 153-54

   (1987).

ORDER - 18

1  "crude method of diagnosing" carpal tunnel, and stated there is not objective

2  evidence of functional limitations caused by carpal tunnel,  Tr. 42-43.  Plaintiff

3  argues there is evidence of her limitations due to carpal tunnel, but cites only to her

4  self-reported numbness, tingling, and incidents of dropping items.  ECF No. 16 at

5  13 (citing Tr. 467-71).  Plaintiff had a positive Tinel's, but normal examination of

6  her hands otherwise, including normal grip strength.  Tr. 470-71.  The ALJ noted

7  there is no objective evidence of Plaintiff having difficulties with handling,

8  maintaining grip, grasping items, or dropping items.  Tr. 18.  There is substantial

9  evidence to support the ALJ's finding that carpal tunnel syndrome is not a severe

10  impairment.

11        Next, Plaintiff argues the ALJ erred in not developing the record.  ECF No.

12  16 at 13-14.  Plaintiff contends the ALJ should have ordered an EMG and

13  developed the record regarding Plaintiff's carpal tunnel syndrome because the ALJ

14  deemed the record inadequate.  *Id.*  "An ALJ is not required to order every medical

15  evaluation that could conceivably shed light on a claimant's condition, but rather

16  just those that would resolve ambiguities or inadequacies in the record."  *Lloyd v.*

17  *Astrue*, No. C-11-4902-EMC, 2013 WL 503389, at *5 (N.D. Cal. Feb. 8, 2013)

18  (*citing Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001)).  Plaintiff's

19  disagreement with the ALJ's conclusions does not make the record ambiguous or

20  inadequate.  *See Leitner v. Comm'r Soc. Sec.*, 361 F. App'x 876, 877 (9th Cir.

ORDER - 19

1    2010) (the "claimant bears the burden" of establishing that symptoms interfere

2    with his or her ability to "perform basic work activities," and the ALJ, on that

3    record, could make such a determination) (citations omitted).

4        While Plaintiff argues the record was inadequate to determine whether her

5    carpal tunnel was a severe impairment or not, there was adequate evidence for the

6    ALJ to determine Plaintiff's carpal tunnel is non-severe.  Plaintiff's hearing was

7    held one year after she was diagnosed with carpal tunnel syndrome; although

8    Plaintiff was told to follow-up on her condition in March 2017, she had not

9    followed up by the date of her hearing.  Tr. 18.  Plaintiff argues her testimony that

10    she had ongoing symptoms demonstrates carpal tunnel is a severe impairment, but

11    Plaintiff offers no explanation as to why she did not seek treatment for the

12    condition for one year.  ECF No. 16 at 13-14 (citing Tr. 58-60).  The ALJ also

13    relied on Dr. Daller's opinion that the impairment is not severe.  Tr. 27, 42-43.

14        Plaintiff also contends the administrative record is incomplete, as the ALJ

15    cited to 10F/115-118, while the record ends at 10F/114.  ECF No. 16 at 14 (citing

16    Tr. 18).  The record does not appear to be cutoff, as the last page of 10F/114 states

17    it contains "page 3 of 3," and the transcript index and page numbers match there

18    being 114 pages in exhibit 10F.  As indicated by Defendant, the ALJ cited to

19    10F/115-118 as containing the January 16, 2018 record diagnosing carpal tunnel,

20    which is actually contained at 10F/98-102.  Thus, Plaintiff has not demonstrated

ORDER - 20

1  the administrative record is missing any pages.  The ALJ did not error in not

2  developing the record.

3      Next, while the ALJ found Plaintiff's colitis to be a severe impairment, Tr.

4  17, the ALJ considered Plaintiff's history of endometrial cancer and multiple

5  surgeries and complications, and found they are non-severe.  Tr. 18.  Plaintiff

6  argues the ALJ erred in finding the following conditions non-severe: her history of

7  surgeries, including abdominal hysterectomy and bladder repair surgeries, as well

8  as her adhesions, polyps and narrow lumen of the colon, resulting in abdominal

9  pain, diarrhea, and need for additional restroom breaks and absenteeism.  ECF No.

10  16 at 12-13.  The ALJ found the medical evidence does not support ongoing

11  functional limitations due to Plaintiff's history of surgeries and related symptoms

12  and complications.  Tr. 18.  The ALJ noted that while Plaintiff alleges chronic

13  abdominal pain with diarrhea and nausea, she overall has had conservative

14  treatment, her imaging and gastroenterology screenings have been generally

15  normal, her physical examinations have been generally normal, and the medical

16  records indicated Plaintiff had improvement in her diarrhea with medication.  Tr.

17  23-24.  While there are some abnormalities documented in the medical records,

18  such as the ALJ noted the colonoscopy found two polyps and a biopsy found

19  fragments of tubular adenoma, there were no indications of malignancy or other

20  severe abnormalities that would support functional limitations due to these issues.

Tr. 24 (citing Tr. 285-86).  The ALJ also relied on Dr. Daller's opinion, who found there is not objective evidence to support Plaintiff's alleged level of limitations, and there is no documented etiology for Plaintiff's reported frequent diarrhea.  Tr. 18, 23-25, 27.  While Plaintiff offers an alternative interpretation of the evidence, the ALJ's step-two findings are supported by substantial evidence.

Further, even if the ALJ should have determined that Plaintiff's carpal tunnel syndrome and history of surgeries and resulting complications and symptoms are severe impairments, any error would be harmless because the step was resolved in Plaintiff's favor.  *See Stout v. Comm'r of Soc. Sec. Admin*., 454 F.3d 1050, 1055 (9th Cir. 2006); *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005).  Plaintiff makes no showing that any of the conditions mentioned create limitations not already accounted for in the RFC.  *See Shinseki*, 556 U.S. at 409-10 (the party challenging the ALJ's decision bears the burden of showing harm). Plaintiff primarily argues her self-reported symptoms, that are not supported by the objective evidence, support additional limitations; however, the ALJ rejected Plaintiff's claims for clear and convincing reasons, as discussed *supra*.  Thus, the ALJ's step two finding is legally sufficient.  Plaintiff is not entitled to remand on these grounds.

ORDER - 22

**C. Plaintiff's Symptom Claims**

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting her symptom claims.  ECF No. 16 at 15-20.  An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms.  SSR 16–3p, 2016 WL 1119029, at *2.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Molina*, 674 F.3d at 1112 (quotation marks omitted).  "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted).  General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims.  *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently

explain why it discounted claimant's symptom claims)).  "The clear and convincing [evidence] standard is the most demanding required in Social Security cases."  *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 416.929(c).  The ALJ is instructed to "consider all of the evidence in an individual's record," to "determine how symptoms limit ability to perform work-related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's

ORDER - 24

1 statements concerning the intensity, persistence, and limiting effects of her

2 symptoms were not entirely consistent with the evidence.  Tr. 23.

3      *1. Inconsistent Objective Evidence*

4      The ALJ found Plaintiff's symptom claims were inconsistent with the

5 objective evidence.  Tr. 23-27.  An ALJ may not discredit a claimant's symptom

6 testimony and deny benefits solely because the degree of the symptoms alleged is

7 not supported by objective medical evidence.  *Rollins v. Massanari*, 261 F.3d 853,

8 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991);

9 *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch*, 400 F.3d at 680.

10 However, the objective medical evidence is a relevant factor, along with the

11 medical source's information about the claimant's pain or other symptoms, in

12 determining the severity of a claimant's symptoms and their disabling effects.

13 *Rollins*, 261 F.3d at 857; 20 C.F.R. § 416.929(c)(2).

14      Here, the ALJ found that Plaintiff's reported symptoms related to her history

15 of surgery and resulting complications and symptoms were not as severe as she

16 claimed.  Tr. 23.  First, the ALJ noted Plaintiff sought only conservative treatment.

17 *Id.*  Second, the ALJ found Plaintiff's imaging, labs, and gastroenterology

18 screenings were generally normal, and showed only slight abnormalities with no

19 acute findings.  Tr. 23-24 (citing, e.g., Tr. 290, 405, 484, 487).  While Plaintiff

20 complained of ongoing abdominal/pelvic symptoms at medical appointments, her

ORDER - 25

physical examinations were generally normal.  Tr. 24 (citing, e.g. Tr. 282, 359, 364).  Plaintiff argues the objective evidence supports her allegations of chronic unremitting diarrhea, and cites to medical records where Plaintiff sought medical treatment for her symptoms and self-reported frequent diarrhea.  ECF No. 16 at 16.  However, Plaintiff did not allege disability due to a physical condition, Tr. 73, 222, and did not take any medications for a period of time, Tr. 247.   In July 2017, Plaintiff reported six to eight weeks of unremitting diarrhea.  Tr. 279.  At the visit, Plaintiff reported she had a negative stool study, she denied weight loss and genitourinary symptoms, and she had normal bowel sounds with right abdominal tenderness.  Tr. 279-82.  Plaintiff was scheduled for a colonoscopy.  Tr. 282.  The colonoscopy found polyps and a biopsy indicated fragments of tubular adenoma, but there was no malignancy.  Tr. 24 (citing Tr. 284-85).  The colonoscopy was not able to be completed due to suspected distortion of the colonic anatomy secondary to extensive adhesions.  Tr. 285.  Despite Plaintiff having some abnormalities and reported symptoms, Dr. Daller testified the record lacked objective evidence of frequent episodes of diarrhea causing the level of alleged limitations as Plaintiff did not have abnormal weight loss, hemoglobin, or albumin, and the records did not provide evidence of diarrhea causing interference with a workday.  Tr. 44-45.  Plaintiff argues the objective evidence supports her allegations, however Plaintiff primarily cites to record of her self-reported symptoms, and the records include

1  Plaintiff's reported improvement with medication, as well as visits due to Plaintiff

2  complaining of pain after lifting and carrying her daughter.  ECF No. 16 at 15-16,

3  Tr. 380, 389, 525.

4      Next, the ALJ found Plaintiff's respiratory symptoms are not as severe as

5  claimed.  Tr. 24.  The medical records note Plaintiff had intermittent mild asthma,

6  and her imaging and physical examinations have been generally normal.  *Id.* (citing

7  Tr. 359, 364, 506, 558).  Plaintiff reported only occasional wheezing.  Tr. 420.

8  Plaintiff does not present any arguments as to the objective evidence supporting

9  her allegations of more severe respiratory

10     Next, the ALJ found Plaintiff's mental health symptoms are not as severe as

11 claimed.  Tr. 25.  Plaintiff's mental status examinations demonstrated some

12 abnormalities at times, such as impulsivity, but were otherwise generally normal.

13 Tr. 25 (citing, e.g., Tr. 281-82, 292-93, 295-96, 314).  Plaintiff denied issues with

14 concentration, memory, depression or anxiety in July 2017.  Tr. 25 (citing Tr. 281-

15 82).  Plaintiff's mood and symptoms were observed as stable with medications.

16 Tr. 26 (citing Tr. 292, 295).  In August 2018, Plaintiff's symptoms mood was

17 stable on medication with significant improvement in her depression, and her

18 bipolar disorder was noted as only mild.  Tr. 26 (citing Tr. 428, 437, 442).

19 Plaintiff points to an emergency department visit on August 4, 2018 as evidence of

20 ongoing anxiety; however, Plaintiff was assessed with costochondral pain

syndrome and history of gastroesophageal reflux disease, not anxiety.  ECF No. 16 at 16, Tr. 408.  Plaintiff later self-reported the visit was anxiety-induced chest pain. Tr. 434.  Plaintiff also cites to appointments where she reported some ongoing symptoms, ECF No. 16 at 17-18, however the appointments also discuss ongoing improvement in symptoms, no difficulty concentrating, and no memory difficulties.  Tr. 425, 428-30.

On this record, the ALJ reasonably concluded that the objective medical evidence is not consistent with Plaintiff's complaints of disabling symptoms.  This finding is supported by substantial evidence and was a clear and convincing reason, along with the other reasons offered, to discount Plaintiff's symptoms complaints.

*2.  Improvement with Treatment*

The ALJ found Plaintiff's symptom claims were inconsistent with her improvement with treatment.  Tr. 24-26.  The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms.  20 C.F.R. § 416.913(c)(3); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations).

ORDER - 28

First, the ALJ found Plaintiff's physical symptoms improved with treatment. Tr. 24-25.  In January 2018, Plaintiff's provider noted Plaintiff's chronic diarrhea was "doing much better" with medication.  Tr. 24 (citing Tr. 461).  In August 2018, Plaintiff had a normal abdominal examination and normal chemistry profile. Tr. 24 (citing Tr. 407-08).  Plaintiff's COPD/reactive airway disease responded well to treatment with inhaler medication.  Tr. 25 (citing Tr. 561).

Second, the ALJ found Plaintiff's mental health symptoms improved with treatment.  Tr. 25-26.  Plaintiff reported her mood was stabilized and she had significant improvement in depression with medication.  Tr. 26 (citing Tr. 428, 437, 442).  Plaintiff's providers also noted Plaintiff had improvement in her symptoms with medication.  Tr. 26 (citing Tr. 292, 295, 311).  While there are complaints earlier in the record of significant anxiety, by June 2017 the complaints cease, and the records document only mild symptoms.  Tr. 26 (citing Tr. 292, 295 297).  On this record, the ALJ reasonably concluded that Plaintiff's conditions when treated were not as disabling as alleged.  This finding is supported by substantial evidence and was a clear and convincing reason to discount Plaintiff's symptoms complaints.

### 3. Lack of Treatment

The ALJ found Plaintiff's symptom claims were inconsistent with her lack of ongoing mental health treatment.  Tr. 26.  An unexplained, or inadequately

ORDER - 29

1   explained, failure to seek treatment or follow a prescribed course of treatment may

2   be considered when evaluating the claimant's subjective symptoms.  *Orn v. Astrue*,

3   495 F.3d 625, 638 (9th Cir. 2007).  And evidence of a claimant's self-limitation

4   and lack of motivation to seek treatment are appropriate considerations in

5   determining the credibility of a claimant's subjective symptom reports.  *Osenbrock*

6   *v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001); *Bell-Shier v. Astrue*, 312 F.

7   App'x 45, *3 (9th Cir. 2009) (unpublished opinion) (considering why plaintiff was

8   not seeking treatment).  When there is no evidence suggesting that the failure to

9   seek or participate in treatment is attributable to a mental impairment rather than a

10   personal preference, it is reasonable for the ALJ to conclude that the level or

11   frequency of treatment is inconsistent with the alleged severity of complaints.

12   *Molina*, 674 F.3d at 1113-14.  But when the evidence suggests lack of mental

13   health treatment is partly due to a claimant's mental health condition, it may be

14   inappropriate to consider a claimant's lack of mental health treatment when

15   evaluating the claimant's failure to participate in treatment.  *Nguyen v. Chater*, 100

16   F.3d 1462, 1465 (9th Cir. 1996).

17        The ALJ noted that while Plaintiff reported she had difficulty obtaining

18   psychiatric treatment because she had to drive over one hour and/or 100 miles from

19   her home to the nearest provider, a MapQuest search indicated Plaintiff lived only

20   25 minutes from one town and 45 minutes from another town where there are a

ORDER - 30

total of 18 psychiatric providers between the two towns.  Tr. 26.  However, the ALJ did not address whether the providers accepted Plaintiff's insurance, or whether the providers were accepting new patients when Plaintiff needed treatment.  The ALJ also did not address Plaintiff's reported difficulties accessing treatment due to her psychological symptoms.  Tr. 48-49.  However, any error in the ALJ's consideration of Plaintiff's lack of mental health treatment is harmless, as the ALJ gave other clear and convincing reasons to reject Plaintiff's symptom claims.  *See Molina,* 674 F.3d at 1115

    *4.  Activities of Daily Living*

    The ALJ found Plaintiff's symptom claims were inconsistent with her activities of daily living.  Tr. 26-27.  The ALJ may consider a claimant's activities that undermine reported symptoms.  *Rollins*, 261 F.3d at 857.  If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms.  *Fair*, 885 F.2d at 603; *Molina*, 674 F.3d at 1113.  "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment."  *Molina*, 674 F.3d at 1112-13.  Additionally, the ability

ORDER - 31

1    to care for others without help has been considered an activity that may undermine

2    claims of totally disabling pain. *Rollins*, 261 F.3d at 857. However, if the care

3    activities are to serve as a basis for the ALJ to discredit the Plaintiff's symptom

4    claims, the record must identify the nature, scope, and duration of the care

5    involved and this care must be "hands on" rather than a "one-off" care activity.

6    *Trevizo v. Berryhill*, 871 F.3d 664, 675-76 (9th Cir. 2017).

7         The ALJ found Plaintiff activities of daily living demonstrate she is more

8    capable than alleged. Tr. 26. Plaintiff managed her own personal care and

9    medications, cared for her children, prepared meals, performed household chores,

10   went shopping, and attended appointments. Tr. 26. Plaintiff's care for her children

11   included playing with them in the heat, treating them for lice, and lifting and

12   carrying her daughter around. Tr. 26-27, 389, 301-02, 525. Despite reported

13   difficulties leaving the home and being around others, Plaintiff reported going

14   shopping with her bridesmaids, making flower arrangements for her wedding,

15   having a large party after her wedding, and planning and attending events like a

16   honeymoon and holidays. Tr. 26-27 (citing Tr. 299, 301-02, 310). Plaintiff

17   reported living with her mother-in-law due to her limitations, but Plaintiff reported

18   to a provider she and her husband were looking to purchase their own home and

19   had recently located one they could afford. Tr. 26 (citing Tr. 369). Plaintiff also

20   worked at the substantial gainful activity level in the first quarter of 2018. Tr. 27.

ORDER - 32

1   Plaintiff argues her activities are not inconsistent with her allegations, ECF No. 16

2   at 18-20, however the Plaintiff's alternative interpretation of her activities does not

3   detract from the ALJ's assessment.  On this record, the ALJ reasonably concluded

4   that Plaintiff's symptom claims are not consistent with Plaintiff's activities of daily

5   living.  This finding is supported by substantial evidence and was a clear and

6   convincing reason to discount Plaintiff's symptoms complaints.  Plaintiff is not

7   entitled to remand on these grounds.

8   **D. Step-Five**

9       Plaintiff argues the ALJ erred at step five.  ECF No. 16 at 20-21.  At step

10  five of the sequential evaluation analysis, the burden shifts to the Commissioner to

11  establish that 1) the claimant can perform other work, and 2) such work "exists in

12  significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran*,

13  700 F.3d at 389.  In assessing whether there is work available, the ALJ must rely

14  on complete hypotheticals posed to a vocational expert.  *Nguyen*, 100 F.3d at 1467.

15  The ALJ's hypothetical must be based on medical assumptions supported by

16  substantial evidence in the record that reflects all of the claimant's limitations.

17  *Osenbrook*, 240 F.3d at 1165.  The hypothetical should be "accurate, detailed, and

18  supported by the medical record."  *Tackett*, 180 F.3d at 1101.

19      The hypothetical that ultimately serves as the basis for the ALJ's

20  determination, i.e., the hypothetical that is predicated on the ALJ's final RFC

ORDER - 33

assessment, must account for all the limitations and restrictions of the claimant. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009).  As discussed above, the ALJ's RFC need only include those limitations found credible and supported by substantial evidence.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) ("The hypothetical that the ALJ posed to the VE contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record.").  "If an ALJ's hypothetical does not reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy."  *Id*.  However, the ALJ "is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence."  *Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006).  Therefore, the ALJ is not bound to accept as true the restrictions presented in a hypothetical question propounded by a claimant's counsel if they are not supported by substantial evidence.  *Magallanes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989); *Martinez v. Heckler*, 807 F.2d 771, 773 (9th Cir. 1986).  A claimant fails to establish that a step five determination is flawed by simply restating argument that the ALJ improperly discounted certain evidence, when the record demonstrates the evidence was properly rejected.  *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

Plaintiff's argument is based entirely on the assumption that the ALJ erred in

ORDER - 34

considering the opinion evidence and Plaintiff's symptom claims.  For reasons discussed throughout this decision, the ALJ's consideration of Plaintiff's symptom claims and consideration of the lay and medical opinion evidence are legally sufficient and supported by substantial evidence.  Thus, the ALJ did not err in assessing the RFC or finding Plaintiff capable of performing work existing in the national economy.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 16**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 17**, is **GRANTED**.

3. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED January 19, 2021.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 35